IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAWN WYBLE,<br>    Plaintiff,<br><br>    v.<br><br>LIFE'S WORK OF WESTERN PA,<br>    Defendant. | )<br>)<br>)<br>) Civil Action No. 05-1478<br>)<br>)<br>)<br>) |

MEMORANDUM ORDER

Gary L. Lancaster,
District Judge.                              February, 26 2007.

This is an action in race discrimination. Plaintiff, Dawn Wyble, alleges that defendant, Life's Work of Western PA, subjected her to disparate treatment and created a hostile work environment due to her race, Caucasian, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, et. al., and the Pennsylvania Human Relations Act of 1961, 43 Pa.C.S.A. § 954, et. al. Plaintiff seeks compensatory and punitive damages, as well as front and back pay. Defendant has filed a motion for summary judgment contending that plaintiff has failed to state a claim of race discrimination or hostile work environment.

For the reasons set forth below, the motion will be granted.

I.      BACKGROUND

Unless otherwise specifically indicated, the following material facts are undisputed.[1] Plaintiff began working for defendant as an on-call Job Coach in August 1997. Plaintiff was promoted to the position of Coordinator-Welfare to Work in August 1999.

Defendant is a non-profit organization whose mission is to assist persons with disabilities and other barriers to employment to achieve independence and dignity through productive employment opportunities. Defendant is primarily funded by state, county and city grants.

At the time of her termination, plaintiff supervised two Unit Leaders in her department, Ms. Arneeta Smith and Ms. Dionna Whigham-Rojas. Approximately 16 staff members reported directly to these two Unit Leaders and indirectly to plaintiff.

In the years 2000, 2001 and 2002, defendant experienced

---

[1] Plaintiff has attempted to place some of these facts in dispute by stating that "It is denied that this is an undisputed fact, as plaintiff has no knowledge and was not provided with any supporting documentation through the course of discovery, to admit or deny the averments..." See Plaintiff's Responsive Concise Statement of Material Facts in Opposition to Defendant's Motion for Summary Judgment [document # 25]. Plaintiff has not complied with Federal Rule of Civil Procedure 56 (e), which states that "an adverse party's response...must set forth specific facts showing that there is a genuine issue for trial." Therefore, any fact supported by the record to which plaintiff has not shown a genuine dispute, will be deemed undisputed.

financial losses. For the fiscal year ending June 2002, defendant had a projected budget deficit of approximately $436,000. Based on the 2002 budget deficit, Robert Mather, defendant's President and CEO at the time, enacted a corporate restructuring that resulted in operational changes, a reduction of approximately 11 positions and savings of approximately $300,000. Defendant however continued to face a budget deficit as well as a reduction in funding from grants and other sources.

In January 2004, defendant hired Everett McElveen, an African American male, as President and CEO. Mr. McElveen was charged with analyzing the current state of the agency. Mr. McElveen met individually with every Vice President, Director, Coordinator, Supervisor and any employee with supervisory responsibilities. He conducted "SWOT" (Strengths, Weaknesses, Opportunities and Threats) analysis meetings to gain a better understanding of the status of the agency. Mr. McElveen also worked with the Chief Financial Officer, Robbie Querio, who completed a five-year historical analysis of the financial statements. At Mr. McElveen's request, Mr. Querio also performed three and four year projections which revealed that, with no changes regarding expenses or staffing, the agency would have to use its endowment dollars to stay in operation and that approximately one to two years later it would be bankrupt.

Mr. McElveen also requested an analysis regarding how many employees would have to be laid off in order to remove $700,000 from the budget. Mr. Querio informed him that 33 of the 41 lowest paid employees would have to be laid off. Mr. McElveen decided that this would be unacceptable because the lower paid employees were the ones who interacted daily with the agency's clients. After considering the options available, Mr. McElveen concluded that a revised organization structure was necessary. All employees age 57 or older with at least ten years of service were offered early retirement. The agency then eliminated approximately 25 management positions, among them, plaintiff's position. Twenty-one of these positions were held by Caucasians and four were held by African Americans. The savings from the corporate restructuring were approximately $890,000.

## II.   STANDARD OF REVIEW

Fed.R.Civ.P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion

for summary judgment. A dispute over those facts that might affect the outcome of the suit under the governing substantive law, i.e. the material facts, however, will preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. Id. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. Id. at 248-49.

III. DISCUSSION

Defendant has moved for summary judgment on the grounds that plaintiff has failed to state a claim of race discrimination or of a hostile work environment. According to defendant, even if plaintiff could establish a prima facie case of either claim, plaintiff has failed to show that defendant's stated reasons for its actions were pretextual.

Plaintiff contends that she has put forth sufficient evidence to establish a prima facie case of both, race discrimination and a hostile work environment. Moreover, plaintiff contends that she has put forth evidence that rebuts defendant's stated reasons for its actions.

The court finds that the evidence of record is such that a reasonable jury could not return a verdict for plaintiff, therefore, defendant is entitled to summary judgment.

A.  <u>Disparate Treatment</u>

Title VII of the Civil Rights Act of 1964 reads in relevant part:

> (a) It shall be an unlawful employment practice for an employer--
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely effect his status as an employee, because of such individual's race, color, religion, sex or national origin.

42 U.S.C. § 2000e-2(a).

A violation of Title VII can be shown in two separate and distinct ways. <u>See generally</u> <u>Watson v. Fort Worth Bank & Trust</u>, 487 U.S. 977, 984 (1988). First, a Title VII plaintiff can utilize the disparate impact theory of discrimination.

Alternatively, the Title VII plaintiff can argue a disparate treatment theory of discrimination. This is the theory advanced by plaintiff in the instant case. A disparate treatment violation is made out when an individual of a protected group is

6

shown to have been singled out and treated less favorably than others similarly situated on the basis of an impermissible criterion under Title VII. See, e.g., International Bhd. of Teamsters v. United States, 431 U.S. 324, 335-36 n. 15 (1977). Proof of the employer's discriminatory motive is critical under this analysis. Id. Discriminatory intent can either be shown by direct evidence, see, e.g., Slack v. Havens, 7 Fair Empl. Prac. Cas. (BNA) 885 (S.D. Cal. 1973), aff'd as modified, 522 F.2d 1091 (9th Cir. 1975), or through indirect or circumstantial evidence. See, e.g., McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

If discriminatory intent is shown indirectly, the burden of production shifts to the employer once the plaintiff establishes a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802. In the seminal case of McDonnell Douglas, the Supreme Court set forth the by now quite familiar four-prong test for what constitutes a prima facie case. The McDonnell Douglas test is the following:

> (i) that [the complainant] belongs to a racial minority; (ii) that [the complainant] applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite [the complainant's] qualifications, [the complainant] was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to

>seek applicants from persons of complainant's qualifications.

McDonnell Douglas, 411 U.S. at 802 (footnote omitted).

The McDonnell Douglas test is varied slightly in terms of a reverse discrimination claim such as this one. Plaintiff in this case can set forth a prima facie case of discrimination by presenting sufficient evidence to allow a reasonable fact finder to conclude (given the totality of the circumstances) that the defendant treated plaintiff less favorably than others because of her race. Iadimarco v. Runyon, 190 F.3d 151, 163 (3d. Cir. 1999).

Once plaintiff has set forth a prima facie case, the employer's burden is to articulate a legitimate, nondiscriminatory reason for the adverse action. However, the ultimate burden of persuasion on the issue of intent remains with the Title VII plaintiff. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). To defeat summary judgment, plaintiff must then point to some evidence from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. Plaintiff must show such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's legitimate proffered reasons for its action that a reasonable fact finder

could rationally find them unworthy of credence and infer that the employer did not act for the asserted non-discriminatory reasons. Fuentes v. Perskie, 32 F.3d 159, 764-765 (3d. Cir. 1994).

In the instant action, plaintiff alleges that she was discriminated on the basis of race because (1) she was laid off while less senior and less qualified African American employees were retained, (2) she was not considered for a Program Facilitator position when she was laid off, and (3) after she was laid off, she was not considered for a Case Manager position that became available. For purposes of this summary judgment motion, defendant does not dispute that plaintiff could make a prima facie case of discrimination. As such, we will now evaluate defendant's proffered reasons for its actions.

Defendant has presented evidence that at the time plaintiff was laid off, the agency was in a dire financial situation. The new CEO, Mr. McElveen was instructed to assess the organization's financial situation and implement a plan that would result in financial savings. Defendant has also produced undisputed testimony that Mr. McElveen completed extensive analysis of the organization before deciding that a corporate restructuring was necessary. Defendant decided to eliminate senior and mid-level management positions, including plaintiff's position. The

9

corporate restructuring resulted in the elimination of approximately 25 positions and savings of approximately $890,000.

Defendant has also presented evidence that plaintiff received a higher salary and higher benefit levels than any of the four employees that plaintiff claims were not laid off because they were African American. Specifically, defendant asserts that Ms. Smith and Ms. Whighham-Rojas had more limited job responsibilities and less pay than plaintiff. Defendant also contends that Ms. Woodson was transferred to a different department, but that she had substantially the same job duties both before and after the corporate restructure. Finally, defendant asserts that Mr. Green was transferred to a Case Manager position, a lower position than plaintiff, after plaintiff was terminated. These individuals were not similarly situated to plaintiff because they did not belong to the high to mid-level management positions that defendant decided needed to be eliminated.

Although plaintiff points to three African American employees that received "new" positions, she fails to mention that 13 newly created positions were filled by Caucasian employees. See McElveen Dep., Exhibit 1. Defendant notes that no management employee whose position was eliminated in the corporate restructuring was considered for a lower level position. Further, defendant points out that plaintiff did not

10

express any interest in being considered for any other positions or apply for other positions. In fact, when told that her position was being eliminated, plaintiff said she was happy that she no longer had to work for defendant.

These are all non-discriminatory, legitimate reasons for defendant's actions. As such, plaintiff must point to some evidence from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

Plaintiff contends that although there was a corporate restructuring, she was better qualified than other African American employees that were not laid off or given promotional opportunities. She also alleges that she was an excellent employee and critical to the success of the Welfare to Work program. Therefore, plaintiff alleges that the decision to terminate her must have been motivated by race.

The court finds that plaintiff has failed to point to such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's legitimate proffered reasons for its actions that a reasonable fact finder could rationally find them unworthy of credence and infer that the employer did not act for the asserted non-discriminatory reasons. See Fuentes at 764.

The record shows that as part of the corporate restructuring, 16 new positions were created. Although plaintiff calls them "promotional opportunities," they did not entail any increase in pay or benefits. These positions were a result of expanding job responsibilities previously performed by other terminated employees. Plaintiff also does not dispute that she expressed happiness at being laid off. Plaintiff has failed to point to evidence that would allow a reasonable fact finder to disbelieve defendant's legitimate reasons for its actions or to believe that a discriminatory motive was more likely than not a motivation factor in the decision. As such, defendant's motion for summary judgment on plaintiff's disparate treatment claim is granted.

### B. Hostile Work Environment

We now turn to plaintiff's claim that she was subject to a hostile work environment because of her race. Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The phrase "terms, conditions, or privileges of employment" includes requiring employees to work in a discriminatory, hostile, or abusive environment. Meritor Savings Bank FSB v. Vinson, 477 U.S. 57, 65-66 (1986).

The Act does not make actionable any conduct that is merely offensive, and the "mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee would not affect the conditions of employment to sufficiently significant degree to violate Title VII." Id. at 67 (citations and quotation marks omitted). The challenged conduct must be severe or pervasive enough "to create an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). When the workplace is permeated, however, with "discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." Id. (internal citations and quotation marks omitted).

Whether an environment is objectively "hostile" or "abusive" can be determined only by looking at all the circumstances. Factors to consider may include: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

Plaintiff relies on three different instances to support

her contention that she was subject to a hostile work environment. The first incident occurred at a staff meeting, where plaintiff used the word "never" and Mr. McElveen interrupted her and said that "never" was no longer an acceptable word in the workplace. The second incident involved a staff appreciation lunch where plaintiff was about to read a poem and Mr. McElveen asked her if she needed music. The final incident was at another staff meeting where plaintiff asked if defendant would accept any available grants and Mr. McElveen responded something to the effect of "What do you mean, would we ever take grants scraping deer carcasses off of Route 79?" Plaintiff alleges that she was extremely embarrassed and humiliated by these comments.

Assuming that these incidents are evidence of a hostile work environment, plaintiff still needs to show that they were motivated by racial animus. Plaintiff fails to point to *any* evidence that these "incidents" were racially motivated. Plaintiff seems to argue that because Mr. McElveen was an African American and she is Caucasian, these incidents must have occurred because of her race. As the Court of Appeals for the Third Circuit has held, "the race of the selecting official is not a sufficient circumstance to establish a prima facie case of discrimination by itself." Iadimarco v. Runyon, 190 F.3d 151 (3d Cir. 1999).

14

A jury acting reasonably could not find that these incidents amount to a racially hostile work environment. The facts, as alleged, fail to illustrate the requisite severity and pervasiveness mandated by our precedence. See Harris, 510 U.S. at 21. As discussed above, mere offensiveness or insensitivity is not enough to create an actionable offense. See Meritor, 477 U.S. at 65-66. Moreover, there is no evidence that the alleged hostile work environment affected her job performance. Defendant's motion for summary judgment on plaintiff's claim of a hostile work environment is granted.

IV.    CONCLUSION

Defendant's motion for summary judgment is granted. The appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAWN WYBLE,<br>        Plaintiff,<br><br>    v.<br><br>LIFE'S WORK OF WESTERN PA,<br>        Defendant. | )<br>)<br>)<br>)<br>) Civil Action No. 05-1478<br>)<br>)<br>) |

O R D E R

Therefore, this 26th day of February, 2007, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment [document #17] is GRANTED.

BY THE COURT:

_____, J.

cc:   All Counsel of Record

16